**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
JOSE AMILCAR ANTONIO OLIVA and ANTONIO
DE JESUS ORTEZ OLIVA, on behalf of themselves,
FLSA Collective Plaintiffs and the Class Members,

                          Plaintiffs,

         -against-

MARTEL LANDSCAPING and RONALD MARTEL,

                        Defendants.
-------------------------------------------------------------------X

**PRELIMINARY**
**REPORT AND**
**RECOMMENDATION**

CV 17-7201 (RRM) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

      In this Fair Labor Standards Act ("FLSA")/New York Labor Law ("NYLL") action, Judge Mauskopf referred Plaintiffs' Second Motion for Default Judgment [DE 14] to this Court for a Report and Recommendation as to whether the motion should be granted and, if so, what damages if any should be awarded. *See* October 4, 2018 Electronic Order. After reviewing the Plaintiffs' motion papers, the Court determined that additional information was needed from Plaintiffs, *see* DE 15, 17, and that a hearing was necessary. As a result, the Court conducted an inquest in this matter on February 13, 2019 to address the damages issues which needed to be resolved and which could not be resolved on the papers alone.

      At the outset of the inquest, the Court read into the record its recommendations on the issue of liability, finding that Plaintiffs had adequately pleaded the elements of their claims for relief under both the FLSA and the NYLL. The Court then turned to the issue of damages. In view of the default, the damages questions were directed solely to the two named Plaintiffs. With the assistance of an interpreter, both Jose Oliva and Antonio Oliva testified as to the hours they worked daily and weekly for the Defendants during the periods of their respective

employment. A number of the initial calculations submitted by counsel had to be revised based on the actual testimony of the two Plaintiffs. Those revised calculations were made in the Courtroom, before the undersigned, and with the assistance of the Court's Law Clerk, Plaintiffs' attorneys, and a calculator. Based upon the testimony elicited, the documentary evidence produced, and the revised calculations, the Court read its findings and recommendations as to damages into the record. Plaintiffs' counsel ordered the transcript of the inquest which shall constitute this Court's amplified Report and Recommendation to Judge Mauskopf.

The Court also points out that Defendant Ronald Martel attended the inquest. Up to this point, the Defendants had never responded to the Complaint, never communicated with Plaintiffs' counsel, never communicated with the Court, and never responded to the motion for entry of default judgment. Mr. Martel acknowledged the same on the record. He did not have an attorney with him and the Court pointed out that a corporation could not proceed without counsel as a matter of law. Mr. Martel has not hired an attorney to represent the corporation nor himself.

The Court further confirmed with Defendant Martel that he never moved to vacate the default and it appears that he never intended to do so. He apparently made a decision to come to Court when he was served with a copy of the Court's Order scheduling the inquest. The Court gave defendant Martel the opportunity to present documentation at the hearing to show any record-keeping of employee hours by the defendants, but he presented none. The only statement which Mr. Martel offered was his belief that the Plaintiffs did not work as many hours as they claimed. The Court explained in some further detail the meaning of a default and the impact of the Defendants' having ignored this case from the outset. After hearing from Mr. Martel, the Court found that the Defendants had not offered any evidence to refute the damages which the

2

Plaintiffs were seeking and which the Court was evaluating. Nothing was presented by the Defendants to preclude or alter the Court's findings with respect to the damages.

The Court here summarizes its findings and recommendations as to the damages for each Plaintiff:

**Plaintiff Jose Amilcar Ortez Oliva**

Overtime Damages Calculations based upon the uncontroverted testimony of Plaintiff:

| Year | Weeks Worked/Year | Hours Worked/Week | Hourly Rate | Overtime Hours/Week | Unpaid Half-Time Rate | Wages Owed by Year |
|---|---|---|---|---|---|---|
| 2012 | 39 | 55 | $16 | 15 | $8.00 | $4,680.00 |
| 2013 | 39 | 55 | $19 | 15 | $9.50 | $5,557.50 |
| 2014 | 39 | 55 | $20 | 15 | $10.00 | $5,850.00 |
| 2015 | 39 | 55 | $20 | 15 | $10.00 | $5,850.00 |

Total Unpaid Overtime Wages Owed to Jose Oliva: $21,937.50

Statutory Liquidated Damages: $21,937.50

Statutory Damages for failure to provide Wage Notice: $5,000.00

Statutory Damages for failure to provide Wage Statements: $5,000.00

Sub-Total of Damages Owed: **$53,875.00**

**Plaintiff Antonio De Jesus Ortez Oliva**

Overtime Damages Calculations based upon the uncontroverted testimony of Plaintiff:

| Year | Weeks Worked/Year | Hours Worked/Week | Hourly Rate | Overtime Hours/Week | Unpaid Half-Time Rate | Wages Owed/Year |
|---|---|---|---|---|---|---|
| 2012 | 38 | 57.75 | $15 | 17.75 | $7.50 | $5,058.75 |
| 2013 | 38 | 57.75 | $15 | 17.75 | $7.50 | $5,058.75 |

3

| 2014 | 38 | 57.75 | $18 | 17.75 | $9.00 | $6,230.25 |

Total Unpaid Overtime Wages Owed to Antonio Oliva: $16,347.75

Statutory Liquidated Damages: $16,347.75

Statutory Damages for failure to provide Wage Notice: $5,000.00

Statutory Damages for failure to provide Wage Statements: $5,000.00

Sub-Total of Damages Owed: **$42,695.50**

In addition to the foregoing damages, the Plaintiffs seek pre-judgment interest. "It is well-settled that in an action for violations of the [FLSA] prejudgment interest may not be awarded in addition to liquidated damages." *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1064 (1988); *Fermin v. Las Delicias Peruanas Restaurant, Inc.,* 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015); *Begum v. Ariba Discount, Inc.*, No. 12-CV-6620, 2015 WL 223780, at *7 (S.D.N.Y. Jan. 16, 2015). On the other hand, the NYLL does permit the award of both liquidated damages and prejudgment interest. *Kernes v. Global Structures, LLC*, 15-CV-00659, 2016 WL 880199, at *6 (S.D.N.Y. Mar. 1, 2016) (citing *Fermin*, 93 F. Supp. 3d at 48).

Under the state law, "[p]rejudgment interest is calculated . . . on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." *Mejia v. East Manor USA Inc.,* No. 10-CV-4313, 2013 WL 3023505, at *8 n.11; *Begum*, 2015 WL 223780, at *7; *Fermin,* 93 F. Supp. 2d at 48. In accordance with New York State law, "a successful plaintiff may receive prejudgment interest at a rate of 9 per cent per year." *Najnin v. Dollar Mountain, Inc.*, No. 14-CV-5758, 2015 WL 6125436, at *4 (S.D.N.Y. Sept. 25, 2015). This still leaves the question of when prejudgment interest begins to run. As one court has noted, "[w]here . . . damages were incurred at various times, interest shall be computed upon each item

4

from the date it was incurred or upon all of the damages from a single reasonable intermediate date." *Alvarez v. 215 N. Ave. Corp.*, No. 13-CV-049, 2015 WL 3855285, at *3 (S.D.N.Y. June 19, 2015). Where, as in this case, "unpaid wages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all damages from a single reasonable intermediate date." *Maldonado v. LaNueva Rampa, Inc.*, 10-CV-8195, 2012 WL 1669341, at *11 (S.D.N.Y. May 14, 2012) (quoting CPLR § 5001(b)). In wage and hour cases, "the midpoint of the plaintiff's employment within the limitations period is commonly considered a reasonable choice." *Najnin*, 2015 WL 6125436, at *4 (citing *Tackie v. Keff Enterprises, LLC,* No. 14-CV-2074, 2014 WL 4626229, *6 (S.D.N.Y. Sept. 16, 2014)); *Coulibaly v. Millennium Super Car Wash, Inc.,* 12-CV-4760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013) (using the midpoint of plaintiff's NYLL overtime claims to calculate pre-judgment interest).

Here, the period of employment within the limitations period for Jose Oliva runs from January 2012 through early January 2016. The midpoint of this period is January 2014. This Court respectfully recommends to Judge Mauskopf that prejudgment interest of 9% per annum be awarded to Jose Oliva on his unpaid wages with the interest beginning to run from January 1, 2014 until the entry of judgment, with the calculation to be completed by the Clerk of the Court at the time judgment is entered. With respect to Antonio Oliva, the period of employment within the limitations period is January 2012 through December 2014. The midpoint of this period is July 2013. The Court further respectfully recommends to Judge Mauskopf that prejudgment interest of 9% per annum be awarded to Antonio Oliva on his unpaid wages, with the interest beginning to run from July 1, 2013 until the entry of judgment, with the calculation to be completed by the Clerk of the Court at the time judgment is entered.

The Court also read into the record its recommendation with respect to the fee arrangement set out in counsels' retainer agreement, which states a fee of one-third of the total damages awarded. In addition to the contingency fee arrangement, the Court also reviewed in detail the contemporaneous billing records of counsel in order to perform the balancing check of a lodestar analysis. Having done so, the Court found the contingency fee provision to be presumptively reasonable. Therefore, this Court respectfully recommends to Judge Mauskopf that Plaintiffs be awarded attorneys' fees of one-third of the damages awarded.

For the foregoing reasons, this Court recommends that Defendants be held jointly and severally liable to the Plaintiffs for (1) damages representing (a) $21,937.50 in unpaid overtime wages for José Oliva and $16,347.75 in unpaid overtime wages for Antonio Oliva; (b) $21,937.50 in liquidated damages under state law for José Oliva and $16,347.75 for Antonio Oliva; (c) $10,000 in statutory damages each to Jose Oliva and Antonio Oliva for failure to provide wage notices and failure to provide wage statements; (2) prejudgment interest at the rate of 9% per annum on the unpaid wages to (a) José Oliva running from January 1, 2014 until the entry of judgment and (b) Antonio Oliva running from July 1, 2013 until the entry of judgment, with the calculation of interest to be completed by the Clerk of the Court at the time judgment is entered; and (3) attorneys' fees in the amount of one-third of the damages awarded.

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* FED. R. CIV. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Hon. Roslynn Mauskopf, United States District Judge, Eastern District of New

York, 225 Cadman Plaza East, Brooklyn, NY 11201 and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Mauskopf prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Plaintiffs' counsel is directed to serve a copy of this Report and Recommendation upon the Defendants forthwith by overnight mail and first-class mail and to file proof of such service on ECF promptly by March 1, 2019.**

                                    **SO ORDERED.**

Dated: Central Islip, New York
       February 27, 2019

                                    /s/ A. Kathleen Tomlinson
                                    A. KATHLEEN TOMLINSON
                                    U.S. Magistrate Judge